(No. 40632.—

THE DEPARTMENT OF MENTAL HEALTH, Appellee, *vs.* LOUIS COTY, Appellant.

*Opinion filed Nov. 30, 1967.—Rehearing denied Jan. 18, 1968.*

Leonard Karlin, of Chicago, for appellant.

William G. Clark, Attorney General, of Springfield, (Richard E. Friedman, John J. O'Toole, and Jerome F. Goldberg, Assistant Attorneys General, of counsel,) for appellee.

Mr. Justice House delivered the opinion of the court:

This suit is another attack on the constitutionality of the reimbursement sections of the Mental Health Code. (Ill. Rev. Stat. 1961, chap. 91½, pars. 9—19 through 9—25.) Section 9—19 provides that certain patients in a State hospital are liable for maintenance charges, and if the patient is unable to pay or his estate is insufficient, the patient's parents together with other designated members of the family are liable.

The action was instituted by the Attorney General of Illinois against the defendant, Louis Coty, the father of a mentally retarded son in Lincoln State School to collect for the treatment, detention and training of defendant's minor son as provided by statute. The Department filed a motion for summary judgment and the defendant submitted a second motion to strike and dismiss on the basis of Federal constitutional and other objections. The circuit

court of Cook County overruled defendant's motion and entered a judgment on the Department's motion. Defendant appeals to this court on the ground that the claim was in violation of the equal-protection clause of the fourteenth amendment of the Federal constitution.

This court upheld the constitutionality of the reimbursement provisions of the Mental Health Code in *Kough* v. *Hoehler,* 413 Ill. 409. (See also *Department of Public Welfare* v. *Haas,* 15 Ill.2d 204.) Defendant concedes the issue has been resolved under the State constitution but he argues that the question of conformity with the Federal constitution has been raised but not urged and rests this review exclusively on Federal grounds. He argues that assertion of the Department's claim denies him equal protection under the fourteenth amendment for several reasons. First, he complains that this proceeding was instituted after enactment of the new Health Code in 1963, and before its effective January 1, 1964, date against him but not against all liable relatives of other patients. Apparently his objection on this phase is twofold. The new Act contains a five-year limitation and since a portion of the claim against him goes back well beyond five years he contends that no proceeding should be instituted in the interim between enactment and the effective date. The short answer is that the defendant's liability had already accrued and it is generally recognized that suits may be commenced at any time prior to the expiration of a limitation. (See Vol. 34, Am. Jur., sec. 23, pp. 30-31.) There is no merit to the argument that because some, but not all, delinquent relatives were sued that defendant suffered discrimination. Neither an individual nor the State is under any obligation to sue upon every cause of action which may accrue and failure to do so does not render a claim upon which suit is filed discriminatory.

Defendant's next charge of unequal protection is bottomed on the argument that only one small segment of a

class (the parents of a mentally retarded child confined in a hospital) are directed to pay monthly charges in addition to their State and local taxes. This view follows the reasoning of *Department of Mental Hygiene* v. *Kirchner,* (1964) 60 Calif. 2d 716, 388 Pac. 2d 720, where it was said: "The enactment and administration of laws providing for sequestration and treatment of persons in appropriate state institutions * * * who would endanger themselves or others if at large is a proper state function; being so it follows that the expense of providing, operating and maintaining such institutions should be borne by the state. Whether commitment is incidental to an alleged violation of penal statute * * * or is essentially a civil commitment * * * the purposes of confinement and treatment or care in either case encompass the protection of society from the confined person and his own protection and possible reclamation as a productive member of the body politic. Hence the cost of maintaining the state institutions including provision of adequate care for its inmates cannot be arbitrarily charged to one class in the society; such assessment violates the equal protection clause." After granting *certiorari* the Supreme Court vacated the judgment of the California Supreme Court and remanded for a determination by that court as to whether its decision was based on the California constitution or solely on the Federal constitution. (380 U.S. 194, 13 L. Ed. 2d 753, 85 S. Ct. 871.) The California court thereafter held its decision to be based solely on its State constitution, thereby precluding review.

There is a solid array of authority contrary to the California view. Practically all States have reimbursement provisions or family-based repayments in their statutory plans and those courts which have acted upon them have, without exception, given their approval. (See *e.g., In re Mansley's Estate,* (1916) 253 Pa. 522, 98 Atl. 702; *State* v. *Bateman,* (1922) 110 Kan. 546, 204 Pac. 682; *State* v. *Webber,*

(1955) 163 Ohio St. 598, 128 N.E.2d 3; *Thomas v. State,* (1960) 241 Iowa 1072, 44 N.W.2d 410.) We think these cases state the better view.

It is next contended that section 9—23 (Ill. Rev. Stat. 1953, chap. 91½, par. 9—23), which provides that the State's Attorney, upon request of the Department, shall file suit against persons refusing to pay the charges, grants to the State's Attorney the exclusive authority to act. This argument is based on the fact that the Attorney General and State's Attorneys have concurrent powers, that the legislature presumably knew of such concurrent powers, and that by specifically delegating authority to the State's Attorneys the legislature thereby limited the power of the Attorney General. The Appellate Court, First District, relying upon such well known cases as *Fergus v. Russel,* 270 Ill. 304, and *People ex rel. Barrett v. Finnegan,* 378 Ill. 387, recently held: "We conclude from the foregoing that the Attorney General of the State of Illinois, as chief law officer of the State, possessed both the common-law power and the statutory authority to act on behalf of the Department of Health * * *." (*Department of Mental Health v. Salmar,* 82 Ill. App. 2d 450, 453-454.) We are in accord with that view. As pointed out in *Fergus v. Russel,* the common-law powers of the Attorney General were preserved to him by the constitution and while the General Assembly can impose additional power and duties upon him, it cannot strip him of his common-law powers. There was no error in the filing of this proceeding by the Attorney General.

The judgment of the circuit court of Cook County is therefore affirmed.

*Judgment affirmed.*