Charles L. KEYS, Plaintiff,

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant.

No. 71 C 2940.

United States District Court,
N. D. Illinois.

April 16, 1973.

W. Mauldin Smith, Cornelius E. Toole, Chicago, Ill., for plaintiff.

Stuart Bernstein and James W. Gladden, Jr., of Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This is a civil rights action brought by the plaintiff, a cost accountant, against his former employer, to allegedly vindicate his right to equal employment and freedom of expression guaranteed under the United States Constitution and protected by 42 U.S.C. § 1981. Jurisdiction is based upon Title 28 U.S.C. Sections 1331, 1332(a)(1) and 1343(4). The amount in controversy is alleged to exceed $10,000 exclusive of interest and costs. The plaintiff, Charles L. Keys, is a United States citizen and a resident of Chicago, Illinois. The defendant Continental Illinois Bank and Trust Company is incorporated in Illinois and has its principal place of business in the Northern District of Illinois.

The plaintiff in his complaint alleges, *inter alia*, the following facts:

1. Plaintiff is a black-American male whose known American ancestry is primarily of Negroid-African descent. The plaintiff, like the majority of American males of Negroid-African ancestry, regards the display of facial hair growth in the form of mustaches, goatees, beards and long sideburns as traditional symbols of black-American masculinity.

2. Plaintiff began employment with the defendant corporation on or about July 28, 1969, and remained employed until on or about May 4, 1971, at which time he was discharged for racial reasons.

3. On or about April 23, 1971, plaintiff was informed of a new dress code being instituted by the de-

fendant and that his physical appearance, specifically the length of his sideburns, was in violation of said dress code. On or about May 3, 1971, plaintiff was informed by defendant corporation, that if plaintiff's sideburns were not cut to conform with the dress code by the following day, a recommendation would be made for the termination of plaintiff's employment. On or about May 4, 1971 plaintiff was informed that a recommendation had been made to the personnel division of the defendant corporation that plaintiff be terminated for failure to comply with defendant corporation's dress code. On or about May 7, 1971 plaintiff informed defendant corporation that he had no intention of further cutting his sideburns. Plaintiff was informed that he was being terminated from employment as of May 5, 1971 for failure to comply with bank regulations.

4. The effect of defendant's dress code regulation is to have a chilling effect upon the plaintiff and other black men who seek to communicate black pride and beauty through the cultivation of facial hair growth; and that this would curtail plaintiff's right to express his black personality which is a symbolic expression of freedom of speech.[1]

5. The detrimental racist action of the defendant has altered the plaintiff's family-life structure from one of patriarchy to one of matriarchy, as the plaintiff is no longer the chief breadwinner of the family, thereby causing irreparable psychological damage to the plaintiff, and plaintiff's spouse and children. Defendant has further sought to punish, intimidate and cause undue hardship to the plaintiff for not conforming to racist white thoughts by maliciously attempting to delay and hinder the plaintiff's justifiable claims to unemployment compensation.

The plaintiff seeks to recover $500,000 as actual damages, and $500,000 as exemplary damages, plus the cost of this action.

The defendant, in its instant motion, contends that there are no material issues of fact and that defendant is entitled to summary judgment as a matter of law. In support of the instant motion, the defendant has filed affidavits and exhibits which disclose in relevant part:

1. Plaintiff was employed on July 28, 1969. Prior to his employment, plaintiff completed an application for employment. Above the plaintiff's signature on the application appeared the following language:

"I further understand and agree that my employment with the bank may be terminated at the discretion of the bank. . . . If employed, I will comply with all applicable bank rules and regulations now and hereafter in effect."

2. In April, 1971, Continental adopted a formal dress and personal appearance code. When plaintiff failed to comply with the code by May 4, 1971, the date set by his superiors for compliance, plaintiff was sent to the Personnel Department by his supervisor with a recommendation that he be terminated. At this time, plaintiff was given another opportunity to comply with the code. After initially

[1] The plaintiff further alleges in the complaint that "long sideburns, beards and mustaches have long been worn by black men, and/or men of African and Negroid descent to show a rejection of traditional standards set by Caucasion men that black men have been forced to conform with for survival in America. . . . now part of the black consciousness movement and a rejection of the white-American life style model as being the exclusive and only set of life styles to emulate."

indicating a willingness to trim his sideburns to meet the code standards, plaintiff again refused to trim his sideburns to comply with the code and, therefore, was terminated on May 7, 1971. Between May, 1971 and November, 1971, five non-black employees were terminated for failure to comply with the code by reason of long hair and/or facial hair.

3. Despite plaintiff's claims that he was discriminated against by Continental because he was black, plaintiff made the following admissions at his deposition:

a) In his conversation with his supervisor and representatives of the Personnel Department about the code and his termination for refusal to comply with the code, plaintiff never once charged that the code discriminated against blacks (Dep. 45–46, 57, 64 and 66), notwithstanding the fact that plaintiff discussed his problem with an attorney between the time the code was announced and the time he was terminated (Dep. 67).

b) After the code was announced, plaintiff and four other employees drafted a petition opposing the code (Dep. 48). This petition makes no charge that the code discriminated against blacks. Plaintiff stated at the deposition that nothing significant was left out of the petition from his point of view (Dep. 49).

c) Plaintiff was unwilling to trim his sideburns to keep his job at Continental, but in February, 1971, prior to the adoption of the code, plaintiff shaved off a beard he had grown because he "had a job interview" (Dep. 42).[2]

The plaintiff, in response to the instant motion, generally admits the facts as set forth in the defendant's affidavits and exhibit, yet still claims without specification, that there are issues of fact and law which can only be determined at a hearing. The plaintiff does not support his position with any affidavits or verified denial of facts.

It is the opinion of this Court that there are no genuine issues of material fact and that summary judgment should be granted in favor of the defendant.

Rule 56(e) of the Federal Rules of Civil Procedure specifically provides, in relevant part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegation or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The plaintiff has failed to comply with Rule 56(e) in that he has neither supported his position with affidavits nor has he set forth specific facts showing that there is a genuine issue for trial.

It is the opinion of this Court after examining the relevant pleadings, affidavits and exhibits that there are no material issues of fact in the instant action which would preclude summary judgment at this time.

It is well settled that under 42 U.S.C. § 1981 all persons within the jurisdiction of the United States shall have the same rights as are enjoyed by white citizens and that a black employee has a cause of action against an employer if he is discharged solely because of his race. Sanders v. Dobbs Houses Inc., 431 F.2d 1097 (5th Cir. 1971), cert. denied, 401 U.S. 948, 91 S.Ct. 935, 28 L.

2. The plaintiff further stated at his deposition that he was dissatisfied with work at Continental two weeks after he was employed (Dep. 37), that he was actively seeking other employment from the summer of 1970 into early 1971 (Dep. 36), and that if he had been able to find another job he would have left (Dep. 38).

Ed.2d 231. However, the right to work and earn an honest living does not include, absent racial discrimination, the right to work for any particular individual or organization without such individual or organization's consent. *See, e. g.* Van Zandt v. McKee, 202 F.2d 490 (5th Cir. 1953). In the instant action the affidavits and exhibits reveal: (1) that the plaintiff refused to comply with the defendant's dress code although he had previously agreed to comply with all rules and regulations of his employer, (2) that prior to his termination, despite ample opportunity to do so, plaintiff never expressed any feeling that the code discriminated against him as a black, and (3) the code in fact was not used as a vehicle of racial discrimination for both black and white non-conformists had their employment terminated.

It is clear that the plaintiff's employment was terminated not because he was black but because he did not conform to the dress code. Since the plaintiff's loss of employment is not due to his race but to his personal choice of dress, the plaintiff fails to state a cause of action.

 Moreover, the plaintiff contends that his right and the right of other black males to express their black pride via long hair was chilled by the defendant's dress code. The plaintiff has failed to present any case law to support his contention that an employee has a constitutional right to dress and groom himself in any manner he chooses irrespective of the dictates of his employer and the needs of his job. The. Supreme Court has recently stated that jury bias stemming from beards and mode of dress does not reach the level of a constitutional violation. Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). Likewise, a dismissal from employment based on a "bias" as to the mode of dress and grooming is not a *per se* violation of an individual's constitutional rights or the Civil Rights Acts. See Miller v. School District No. 167, 354 F.Supp. 922 (N.D.Ill., 1973); Abshire v. Chicago and Eastern Illinois

Railroad Company, 352 F.Supp. 601 (N. D.Ill.1972).

*Accordingly, it is hereby ordered that the defendant's motion for summary judgment in its favor is granted.*