**Syed J. Iqbal JAFREE, Plaintiff,**

v.

**William J. SCOTT, Individually and as Attorney General of the State of Illinois, et al., Defendants.**

**No. 73 C 2447.**

United States District Court, N. D. Illinois, E. D.

Feb. 20, 1974.

Gilbert A. Cornfield and Jacob Pomeranz of Kleiman, Cornfield & Feldman, Chicago, Ill., for plaintiff.

William J. Scott, Atty. Gen., Chicago, Ill., by Richard C. Robin, Asst. Atty. Gen., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the defendants' motion to dismiss the instant complaint

pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

This is an action seeking to redress the alleged deprivation by the defendants of the plaintiff's civil rights guaranteed by the United States Constitution and protected by the Civil Rights Acts of 1870 and 1871, 42 U.S.C. §§ 1981, 1983, 1985 and 1986. This Court allegedly has jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331(a) and 1343.

The plaintiff, in the complaint, alleges, *inter alia*, the following facts:

1. The plaintiff, Syed J. Iqbal Jafree is a member of a minority group being brown-skinned Asian American born in Pakistan and a member of the Moslem religion. Plaintiff is a permanent resident of the United States of America and has taken the necessary steps toward becoming a citizen of the United States of America. The plaintiff, since August 1, 1972, has been an employee of the State of Illinois and designated as Assistant Attorney General of the State of Illinois. He was appointed by defendant William J. Scott as per a letter dated June 22, 1972.

2. The defendant William J. Scott is the duly elected Attorney General of the State of Illinois. Defendants Robert J. O'Rourke, J. Calvin Bostian and Charles Evans are duly appointed and performing the duties of Assistants Attorney General of the State of Illinois. Defendant William J. Nettles is duly appointed as a member of the staff of the Attorney General of the State of Illinois performing clerical functions.

3. Since August 1, 1972 and thereafter, plaintiff has completely and faithfully performed his duties as an Assistant Attorney General. The excellence of plaintiff's performance as a lawyer, as an Assistant Attorney General and as chief of the Opinion Division of the Office of the Attorney General of the State of Illinois was expressed by defendant Attorney General Scott and defendant Bostian.

4. Prior to and including May 1, 1973 the plaintiff, while an Assistant Attorney General, exercised his rights of free speech and comment to openly express his opinion that the Office of the Attorney General of the State of Illinois suffers from racial discrimination in the staffing of personnel. More specifically, prior to and up to and including May 1, 1973 the plaintiff openly complained that his annual salary of $14,000 a year was less than that received by "white" attorneys of lesser or equal qualifications to the plaintiff in the Office of the Attorney General. Plaintiff also openly criticized the failure of the office of the Attorney General to hire only one black clerk, one black secretary and one black janitor. Furthermore, during the same period of time plaintiff openly criticized the office of the Attorney General for having only one non-white attorney, one Jew and only one registered Democrat as an attorney. Each and all of the defendants were fully aware of the plaintiff's criticism and view of the racial, religious and political discrimination existing in the staffing of the Office of the Attorney General of the State of Illinois.

5. In June of 1973 the plaintiff was assigned the responsibility for objectively researching and considering whether the former Governor of the State of Illinois, Otto Kerner, was entitled to his state pension or whether his pension was to be forfeited because of a conviction under federal law in the United States District Court for the Northern District of Illinois. As the result of plaintiff's impartial research, study and consideration, the plaintiff prepared an opinion and supportive memorandum for consideration by defendant Scott as Attorney General of the State of Illinois, that former Governor Kerner's pension could not legally be forfeited by the State of Illinois. On information and belief, plaintiff alleges that defendant Scott, upon receipt of plaintiff's opinion and supportive memorandum concerning former Governor Kerner's state pension

rights, developed a personal animosity toward the plaintiff unrelated to his professional performance. Without conference or consideration of the plaintiff's view, on July 16, 1973, defendant Scott issued a formal opinion as the Attorney General of the State of Illinois that former Governor Kerner's pension be terminated.

6. While the plaintiff was an Assistant Attorney General for the State of Illinois and prior to July 5, 1973, he joined the American Federation of State, County and Municipal Employees, AFL–CIO. On Numerous occasions and up to and including July 5, 1973, while plaintiff was an Assistant Attorney General of the State of Illinois, defendants Evans and Nettles, in their positions as agents and officers of the Office of the Attorney General of the State of Illinois, threatened plaintiff with loss of employment for each of the following reasons:

a. his criticism of racial, religious and political discriminatory hiring and personnel practices of the Office of the Attorney General of the State of Illinois; and,

b. his membership in and financial support of the American Federation of State, County and Municipal Employees, AFL–CIO.

7. Without prior notice or opportunity for hearing, on July 6, 1973, defendants Evans and Nettles entered plaintiff's office in the Office of the Attorney General of the State of Illinois and gave him a copy of a memorandum dated July 6, 1973 signed by defendant Nettles as Administrative Assistant to defendant Scott as Attorney General of the State of Illinois, that as of July 31, 1973 plaintiff was "removed from the payroll" as an Assistant Attorney General of the State of Illinois. Furthermore, on July 6, 1973 defendants Nettles and Evans, while in plaintiff's office and without his consent but in his presence and in spite of the protest of the plaintiff, forcibly examined the personal effects of the plaintiff in his desk, pre- vented him physically while such acts were in progress from telephoning the police and jointly and severally during the course of this incident threatened him with bodily harm. At the same time defendants Evans and Nettles ordered plaintiff to immediately remove himself from his office and did not allow him the opportunity to remove his personal papers, property, and manuscripts. Following his removal from the office on July 6, 1973, plaintiff advised the local police in Springfield, Illinois of the incident and the actions of defendants Nettles and Evans. On the evening of July 6, 1973 plaintiff sent a special delivery letter to defendant Scott informing him of the series of incidents on that date with defendants Nettles and Evans and asking him to take appropriate action and to reconsider his dismissal as an Assistant Attorney General without a prior hearing and specification of reasons.

8. On or about July 16, 1973 defendant Bostian, in his position as Assistant Attorney General, intimidated and threatened plaintiff. More specifically, defendant Bostian stated that if plaintiff persisted in his attempt to have an investigation by law enforcement agents of the aforesaid actions taken against him by defendants Nettles and Evans on July 6, 1973 and to seek an investigation of racial, religious and political discrimination in the staffing of the Office of the Attorney General, Bostian would see that the plaintiff would be branded as "incompetent and paranoid."

9. Since on or about July 31, 1973 plaintiff has been removed from the employment of the Attorney General of the State of Illinois. As of the date of filing of the instant complaint the plaintiff has been unable to obtain comparable employment or any employment as an attorney. The conduct of the defendants jointly and severally, in removing plaintiff from employment and office as Assistant Attorney General of the State of Illinois for alleged reasons has and will seriously damage plaintiff in his professional standing and prospects for

employment and income. The above actions of the defendants have jointly and severally violated the federal constitutional rights of the plaintiff in that:

a. his employment as an Assistant Attorney General of the State of Illinois was terminated without being afforded prior rights of due process;

b. plaintiff was terminated from employment in violation of his constitutionally protected rights as the result of his protected and reasoned expression of opinion and view concerning discriminatory personnel practices in the office of the Attorney General of the State of Illinois;

c. plaintiff was terminated from employment in violation of his constitutionally protected rights for unlawful political considerations by the Attorney General of the State of Illinois;

d. plaintiff was terminated from employment in violation of his constitutionally protected rights for his participation and activity in a voluntary association, namely the American Federation of State, County and Municipal Employees, AFL–CIO.

10. Furthermore, the alleged actions of defendants Nettles and Evans on July 6, 1973 violated plaintiff's federally protected civil rights in that the actions of these defendants constituted illegal search and seizure of the plaintiff's property in violation of the Fourth Amendment to the Constitution of the United States.

The plaintiff seeks both injunctive relief and actual and punitive damages.

The defendants, in support of their motion to dismiss, contend that this Court lacks jurisdiction over this action because:

1. The complaint fails to allege facts that give rise to a substantial federal question.

2. The complaint insofar as it seeks a monetary award for back salary is an action against the State of Illinois and prohibited by the Eleventh Amendment to the United States Constitution and Ill.Rev. Stat., 1971, Chapter 127, Section 801.

3. The complaint insofar as it seeks damages against the named defendants individually is barred by the doctrine of Public Officials Immunity.

The defendants also contend that the complaint fails to state a claim upon which relief can be granted, in that:

1. Plaintiff's complaint fails to allege a protected property right to employment arising under State law. State law does not provide tenure or civil service for Syed J. Iqbal Jafree or any other Assistant Attorney General of the State of Illinois.

2. The defendants were constitutionally entitled to terminate plaintiff without a pre-termination hearing because of the nature of plaintiff's employment as a policy making and/or policy implementing employee.

3. The defendants were constitutionally entitled to terminate plaintiff without a pre-termination hearing because an Assistant Attorney General's employment relationship with his Division Chief and the Attorney General is the kind of close working relationship wherein personal loyalty and confidence are necessary to their proper functioning.

4. Despite the fact that plaintiff was not constitutionally entitled to a statement of the reasons for his termination and despite the fact that plaintiff refused to accept correspondence from defendants, J. Calvin Bostian gave plaintiff such a statement both orally and in writing.

5. The defendants have not deprived plaintiff of protected property rights or interests in liberty as recognized by the Fourteenth Amendment.

6. The complaint does not allege that the defendants William J. Scott, Robert J. O'Rourke and J. Calvin Bostian personally directed or participated in the alleged illegal manner by which plaintiff's employment termination was implemented.

7. The complaint does not allege sufficient facts to support a finding that defendants William J. Nettles and Charles Evans violated plaintiff's constitutional rights as a result of the alleged illegal manner by which his termination of employment was implemented, because:

 a. plaintiff does not have a protected constitutional right to remain in the offices of the Attorney General when asked to leave by the Administrative Assistant in charge of said office;

 b. plaintiff does not have a protected constitutional right to remove at his sole discretion and under his own authority documents or personalty from the offices of the Attorney General;

 c. defendants have an absolute right and a duty to inspect documents and property that are being packaged and removed from the offices of the Attorney General by an employee whose employment has been terminated to ensure that only personal property and not official documents or public property are being removed.

The defendants have supported their contention with numerous affidavits and exhibits.

The plaintiff, in opposition to the instant motion, contends:

1. Plaintiff has a sufficient property interest in his position so that he could be deprived of it only through due process of law.

2. Defendants have harmed plaintiff's liberty without due process of law.

3. Defendants are all persons who have acted under the color of law.

4. The Eleventh Amendment does not shield the defendants from liability for their wrongful actions in this matter.

It is the opinion of this Court, after carefully examining the relevant pleadings, memoranda, affidavits and exhibits submitted by the parties in support of their respective positions, that as a matter of law the plaintiff has failed to adequately state a claim upon which relief can be granted.

I. PLAINTIFF'S POSITION AS AN ASSISTANT ATTORNEY GENERAL DID NOT NECESSITATE A PRE–TERMINATION HEARING OR A STATEMENT OF REASONS FOR DISCHARGE

 A. The Plaintiff Does Not Have a Property Right in the Position of Assistant Attorney General as Defined by State Law and His Termination of Employment Did Not Adversely Effect His Personal Liberty.

It is well settled that the requirements for a sufficient complaint under 42 U.S.C. § 1983 are that the defendant, while acting under the color of state or local law, subjected the plaintiff to a deprivation of any rights, privileges or immunities secured by the Constitution and the laws of the United States. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961). The plaintiff bases the instant civil rights action on alleged denial of due process by the Attorney General of the State of Illinois and his assistants.

The range of interests protected by procedural due process is not infinite. The requirements for due process apply only to deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are involved the right to a trial-type of prior hearing is essential. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.

Ed.2d 548 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

Liberty and property were never intended to be rigidly defined. National Insurance Company v. Tide Water Company, 337 U.S. 582, 69 S.Ct. 1173, 93 L. Ed. 1556 (1949); McCulloch v. State of Maryland, 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579 (1819).

### 1. Interest in Liberty

 In a free society the definition of liberty must be broad. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L. Ed.2d 551 (1972); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). It is well settled that where a person's good name, reputation, honor or integrity are at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951); United States v. Lovett, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946).

 Thus, if a public employee was refused re-employment or had his employment terminated in a manner reflecting on his good name, reputation, honor or integrity, due process would require an opportunity for the employee to clear his name. After examining the plaintiff's affidavits and the allegations of the complaint it is clear that the manner of the plaintiff's termination of employment in no way suggests that he had been guilty of dishonesty or immorality. There is no social or professional stigma involved in having one's employment as an Assistant Attorney General terminated. There were no public announcements of the reasons of the fact that the plaintiff's employment was terminated. Any individual assessment by the Attorney General or his assistants concerning the plaintiff's work as an Assistant Attorney General does not rise to the level of being a civil rights violation.[1] In fact the plaintiff in the complaint specifically cites a favorable letter which was sent to a prospective employer by one of the defendants. There is no suggestion from the well pleaded portion of the complaint that the defendants' actions in any way put the plaintiff's good name, honor or integrity in jeopardy. Since there was no foreclosure by the defendants' action of the plaintiff's range of future employment opportunities, given a willing employer, due process in the interest of liberty was not required in the plaintiff's employment termination.

It is the opinion of this Court that the defendants' action did not violate due process in relation to the plaintiff's interest in liberty.

### 2. Property Interest

 Property interests protected by procedural due process extend well beyond the interests in real estate, chattels or money. Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971); Bell v. Burson, *supra*; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Property interests are not created by the Consti-

---

1. Even if the comments of the defendants to putative employers of the plaintiff were to rise to being libel or slander courts have held that the mere allegation of the conclusion that a tort has been committed is insufficient to state a claim under the Civil Rights Act. See, e. g., Evain v. Conlisk, 364 F.Supp. 1188 (N.D.Ill.1973). It is clear that the plaintiff in his complaint has failed to properly state that any alleged comments were not true and were not made pursuant to an employer's duty to inform future employer when such comments are made in good faith, in the interest of a social duty and for a limited purpose in a suitable occasion and in a proper manner. See Fleck Brothers Co. v. Sullivan, 423 F.2d 155 (7th Cir. 1970); Schlaf v. State Farm Mutual Auto Insurance, 15 Ill.App.2d 194, 145 N.E. 2d 791 (1964).

tution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law; such rules or understandings secure certain benefits and support claims of entitlements to those benefits. The property rights of state employees in their employment is defined and established in the Illinois Personnel Code, Chapter 127, Section 63b108b et seq. Rule 2–720 of the Department of Personnel and Section 63b108b.16 of the Personnel Code require written notice with reasons for discharge or demotion of an employee subject to the code. Such discharge or demotion can only be effected for good cause. Rule 2–750 and Section 63b111 of the Code guarantees a *protected* employee the right to a hearing upon the employee's written request to the Civil Service Commission. If the Commission's decision is adverse to an employee, Section 63b111a provides an employee with the right to review by the court. It is clear that there are certain public employment positions which by the nature of their tasks and duties should not be protected from termination without cause, and their successful operation is seriously hindered by giving such policy oriented employees tenured or protected status. Accordingly, the Illinois legislature clearly intended that all positions under the Attorney General should not be given the status of being protected positions and thus such employees do not have a property right in their employment. Therefore, Mr. Jafree, the plaintiff, under Illinois law, does not have a property right in his prior position as an Assistant Attorney General.

Contrary to this clear legislative intent, plaintiff contends that he was entitled to a hearing where "good cause" must be demonstrated prior to his termination on the grounds that he satisfactorily completed a 90 day probationary period as stated in a letter from defendant J. Calvin Bostian dated June 22, 1972.[2]

Plaintiff's reliance upon the right to a hearing prior to termination as a result of the completion of a 90 day period appears to be clearly a unilateral expectation and misplaced. The clear intent of the letter in question was to notify Mr. Jafree that he was qualified for an initial appointment as an Assistant Attorney General. The 90 day period was to be used to determine whether he met all the conditions required. After the expiration of the 90 days and the satisfactory fulfillment of the conditions set, Mr. Jafree's employment rose to the status of that of Assistant Attorney General. However, this appointment carried no greater benefits or entitlements than those given to any other Assistant Attorney General. Mr. Jafree is entitled to no more protection than any other Assistant who came to the Office of the Attorney General fully qualified to immediately perform the duties of an Assistant Attorney General.

It is clear that under state law the plaintiff does not have a property interest sufficient to require a hearing before termination of employment. Thus the actions of the defendants do not violate the property right of the plaintiff.

**B. The Summary Dismissal of the Plaintiff is Permitted and Proper Because the Plaintiff is a Policy Making Employee**

Notwithstanding the plaintiff's lack of a property interest in his employment, his summary dismissal given his sensitive position is proper.

■■ It is well settled that a non-policy making employee may not be summarily removed from employment where some property interest exists and/or termination impairs re-employment opportunities. See Board of Regents v. Roth,

---

2. The letter in question (Appendix A to plaintiff's complaint) states, *inter alia*, that: "Mr. Scott has approved your appointment as an Assistant Attorney General. That appointment is on the conditions which we discussed; namely, your taking the bar review course and your initial employment will be upon a trial period of 90 days."

*supra*; Illinois State Employees' Union v. Lewis, 473 F.2d 561 (7th Cir. 1972), cert. denied, 410 U.S. 943, 93 S.Ct. 1370, 35 L.Ed.2d 609 (1973). The critical issue in the instant case is whether a state employee with substantial responsibility and authority such as the plaintiff is covered by the *Lewis* holding. Numerous courts have stated that the Constitution would permit a public official to summarily hire or dismiss on the basis of political association or personal preference any employee engaged directly or indirectly in the formulation or implementation of the policies of a particular governmental office or agency. See Pickering v. Board of Education, 391 U. S. 563 at 570, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Illinois State Employees' Union v. Lewis, *supra*, 473 F.2d at 556, 578; Gould v. Walker, 356 F.Supp. 421, 424–425 (N.D.Ill.1973).

■ In the present case, before a determination can be made whether the duties of an Assistant Attorney General directly or indirectly involve policy making or policy implementation, it is important to understand the duties and functions of the Attorney General.

The Attorney General of the State of Illinois has all the powers and duties engrafted upon that office by common law. Saxby v. Sonnemann, 318 Ill. 600, 149 N.E. 526 (1924); People v. Barrett, 382 Ill. 321, 46 N.E.2d 951 (1956); Department of Mental Health v. Coty, 38 Ill.2d 602, 232 N.E.2d 686 (1967); Stein v. Howlett, 52 Ill.2d 570, 289 N.E.2d 409 (1972). These duties are so numerous that neither the legislature nor courts have sought to enumerate them. People ex rel. Elliott v. Covelli, 415 Ill. 79, 112 N.E.2d 156 (1953). The Attorney General not only possesses those duties imposed by common law but also such additional duties as are imposed by the Constitution and state statutes.[3] Fergus v. Russell, 270 Ill. 304, 110 N.E. 130 (1915). It is clear that the Attorney General is the chief law officer of the state, and as such is the sole representative of the people of the state of Illinois, and the sole official legal advisor to the officers, departments, boards and commissions of the state. People of the State of Illinois v. Marquette Fire Insurance Co., 351 Ill. 516, 184 N.E. 800 (1933); North Chicago Hebrew Congregation v. Board of

3. The statutory duties of the Attorney General are set forth in Chapter 14 Section 4 of the Illinois Revised Statutes, as follows:

First—To appear for and represent the people of the state before the supreme court in all cases in which the state or the people of the state are interested.

Second—To institute and prosecute all actions and proceedings in favor of or for the use of the state, which may be necessary in the execution of the duties of any state officer.

Third—To defend all actions and proceedings against any state officer, in his official capacity, in any of the courts of this state of the United States.

Fourth—To consult with and advise the several state's attorneys in matters relating to the duties of their office; and when, in his judgment, the interest of the people of the state requires it, he shall attend the trial of any party accused of crime, and assist in the prosecution.

Fifth—To consult with and advise the governor and other state officers, and give, when requested, written opinions upon all legal or constitutional questions relating to the duties of such officers respectively.

Sixth—To prepare, when necessary, proper drafts for contracts and other writings relating to subjects in which the state is interested.

Seventh—To give written opinions, when requested by either branch of the general assembly, or any committee thereof, upon constitutional or legal questions.

Eighth—To enforce the proper application of funds appropriated to the public institutions of the state, prosecute breaches of trust in the administration of such funds, and, when necessary, prosecute corporations for failure or refusal to make the reports required by law.

Ninth—To keep, a register of all cases prosecuted or defended by him, in behalf of the state or its officers, and of all proceedings had in relation thereto, and to deliver the same to his successor in office.

Tenth—To keep on file in his office a copy of the official opinions issued by the attorney general and deliver same to his successor.

Eleventh—To pay into the state treasury all moneys received by him for the use of the state.

Twelfth—To attend to and perform any other duty which may, from time to time, be required of him by law.

Appeals, 358 Ill. 549, 193 N.E. 519 (1934); People of the State of Illinois v. The Spring Lake Drainage and Levee District, 253 Ill. 479, 97 N.E. 1042 (1912).

In order to carry out these statutory, constitutional and common law duties, the Attorney General maintains offices in Springfield and Chicago. Obviously the Attorney General cannot personally perform these duties. In order to assist the Attorney General in carrying out this mandate numerous Assistant Attorneys General are employed. It is only through these Assistants that the Attorney General can give guidance to public officers, appear in open court, attend meetings of public officials and otherwise act as the chief legal officer of the State of Illinois. In performing his duties, an Assistant Attorney General acts in the name of and on behalf of the Attorney General. It is axiomatic, therefore, that the Attorney General in selecting and retaining employees must have the personal loyalty and confidence that each Assistant will aid in fulfilling the Attorney General's public mandate. To remove from the Attorney General or in any way diminish his power over appointment and removal would be to emasculate the Attorney General's ability to fulfill his public trust. The removal of an Assistant Attorney General is without doubt the type of situation in which courts should justify a summary dismissal even where such dismissal is allegedly based on the employee's public criticism of his employers.

Since each Assistant Attorney General can act and speak only on behalf of the Attorney General, these employment positions must by definition involve, either directly or indirectly, the formulation and implementation of policy. It is clear that the plaintiff's position of Assistant Attorney General is the type of governmental position involving a policy making mission.[4] Thus the summary dismissal of the plaintiff is proper and just.[5]

## II. THE ACTIONS OF DEFENDANTS EVANS AND NETTLES IN NOTIFYING PLAINTIFF OF HIS DISCHARGE DOES NOT GIVE RISE TO A CLAIM UNDER THE CIVIL RIGHTS ACT.

### A. The Alleged Search and Seizure of Plaintiff's Property did not Constitute a Violation of Plaintiff's Fourth Amendment Rights.

Defendants adequately assert that Mr. Jafree was not in his office but was in the office of the Attorney General at the time of the alleged illegal search. The defendants assert that they did not examine personal effects in the plaintiff's desk but examined the contents of a desk which is the property of the State of Illinois. These defendants also contend that the plaintiff does not have a Fourth Amendment right which precludes the Administrative Assistant in charge of the Springfield Office (defendant Nettles) or the Senior Legal Officer of the Springfield Office (defendant Evans) from inspecting public property under their supervision.

In the instant action plaintiff is not being criminally prosecuted and he does

---

4. Plaintiff in his affidavit in support of his opposition to the instant motion states that he did not make policy for the Attorney General's Office. Plaintiff, however, has not denied that he indirectly makes policy, that he directly implements policy, or that he indirectly implements the policy of the office of the Attorney General. Plaintiff was allegedly Chief of the Attorney General's Opinion Division. From the affidavit of J. Calvin Bostian it is clear that Assistants in the Opinion Division indirectly make certain policy and directly implement policy.

5. Despite the fact that defendants are not legally required to give plaintiff reasons for discharge, defendants' motion to dismiss contains affidavits which clearly indicate that J. Calvin Bostian gave plaintiff oral reasons for his termination and further, attempted to deliver a written statement of reasons for termination. This written statement of reasons for termination was in fact delivered to plaintiff's place of residence. See affidavits of defendant J. Calvin Bostian and Robert S. Craner.

not have a protected constitutional right to remove, at his sole discretion and under his own authority, documents or personalty from offices of the Attorney General. The defendants Nettles and Evans had the duty and right to supervise plaintiff both during his employment and at the time of his discharge. These defendants had a right and duty to inspect documents and property that were being packaged and removed from the offices of the Attorney General by Mr. Jafree. The plaintiff in this case does not have a constitutional right to remove at his sole discretion and under his own authority documents from the offices of the Attorney General. See, e. g., United States v. Donato, 379 F.2d 288 (3rd Cir. 1968); United States v. Collins, 349 F.2d 863 (2nd Cir. 1965); State v. Robinson, 86 N.J.Super. 308, 206 A.2d 779 (1965).

The defendants Nettles and Evans would have been remiss in their duties if they had not taken precaution to prevent public property and documents from being removed from the Attorney General's Office.

**B. The Alleged Threats of the Defendants Did Not Constitute a Violation of the Plaintiff's Civil Rights.**

 Plaintiff alleges that " . . . on July 6, 1973, defendants Nettles and Evans, while in plaintiff's office . . . prevented him physically while such acts [of search] were in progress from telephoning the police and jointly and severally during the course of this incident threatened him with bodily harm" (complaint, paragraph 14). No other operative facts have been alleged by the plaintiff. The plaintiff fails to allege that the defendants took any affirmative action in carrying out the threats. These mere conclusions are insufficient to state a claim against the defendants upon which relief can be granted. Ortega v. Ragen, 216 F.2d 561 (7th Cir. 1954); Fidtler v. Rundle, 316 F.Supp. 535 (E.D.Pa.1970); United States ex rel. Smith v. Heil, 308 F.Supp. 1063 (E.D.Pa.1970); Egan v. City of Aurora, 174 F.Supp. 794 (N.D.Ill.1959).

 It is well settled that under the relevant Civil Rights Acts all persons within the jurisdiction of the United States shall have the same rights as are enjoyed by white citizens and that a minority employee has a cause of action against an employer if he is discharged solely because of his race. Sanders v. Dobbs Houser Inc., 431 F.2d 1097 (5th Cir. 1971), cert. denied, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (1972). However, the right to work and earn an honest living does not include, absent racial discrimination or deprivation of Civil Rights protected by the United States Constitution, the right to work for any particular individual or organization without such individual or organization's consent. See, e. g., Van Zandt v. McKee, 202 F.2d 490 (5th Cir. 1953); Keys v. Continental Illinois National Bank & Trust Company of Chicago, 357 F.Supp. 376 (N.D.Ill.1973).

Accordingly, it is hereby ordered that the defendants' motion to dismiss is granted and the cause is dismissed.