607 F.2d 858
 Edward G. FAYLE, Appellant,
v.
Glenn STAPLEY, Treasurer of Maricopa County; Dr. Suzanne
Dandoy, Director of Health Services; Dr. G. Lee
Sandritter, Superintendent of the
Arizona State Hospital, Appellees.
 No. 77-2875.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 5, 1979.
 
 Calvin Lee, Venable, Rice, Lee & Capra, Phoenix, Ariz., for appellant.
 Linda A. Drake, Phoenix, Ariz., argued for appellees; William R. Jones, Jr., Jones, Telborg, Sanders, Haga & Parks, Phoeniz, Ariz., on the brief.
 Appeal from the United States District Court for the District of Arizona.
 Before DUNIWAY and ELY, Circuit Judges, and PORT,* District Judge.
 PER CURIAM:
 
 
 1
 The appellant Fayle seeks to overturn the District Court's summary judgment in favor of appellees in a civil rights suit brought by Fayle under 42 U.S.C. § 1983. In part, the judgment must be reversed and the cause remanded.
 
 
 2
 In the District Court, Fayle claimed that a state court order which required him to pay the cost of his own involuntary confinement in a state mental hospital violated his constitutional rights.
 
 
 3
 Specifically, Fayle contends that the Arizona statutory scheme,[1] as applied by the appellees, deprived him (1) of his right to notice and the opportunity to be heard before his property was taken from him, (2) of equal protection of the laws by virtue of the fact that prison inmates and jail prisoners are not required to pay for the cost of their own confinement in state institutions while involuntarily committed mental patients are required to do so, and (3) of his right to counsel in this and other civil and criminal proceedings because, having been deprived of his only property, he was without means to hire counsel of his own choosing to represent him at the various hearings.
 
 I.
 
 4
 On August 1, 1972, Fayle was indicted in an Arizona state court for assault with intent to murder. Prior to trial, on February 26, 1973, Fayle was adjudged incompetent to stand trial on the criminal charges and was involuntarily committed to the Arizona State Hospital. Three years later, on February 19, 1976, Fayle was again declared incompetent to stand trial, and, at that time, the criminal charges against him were dismissed with prejudice. Also, at the same hearing, the state court civilly committed Fayle to the Arizona State Hospital for mental health treatment.
 
 
 5
 Prior to Fayle's civil commitment, on September 17, 1975, the Maricopa County Attorney's office petitioned the Superior Court of Maricopa County, Arizona, for an order requiring Fayle to pay such expenses of his hospitalization and maintenance as he could afford, pursuant to Ariz.Rev.Stat. § 13-3992 (then § 13-1623). Acting on the petition, the state court ordered appellee Sandritter, Superintendent of the Arizona State Hospital, to investigate and report back to the court on Fayle's ability to pay for his confinement. Then, on December 17, 1975, the court ordered Sandritter, as custodian of Fayle's Patient Deposit Fund, consisting primarily of disability insurance benefits, to reimburse the county treasurer (appellee Stapley) in the amount of $5,000 for Fayle's past care and maintenance. The order also required Sandritter to remit to the county treasurer on a monthly basis ninety percent of any income Fayle received in the future for as long as Fayle remained a patient at the hospital and was being supported by county funds. In response, Fayle filed his civil rights action on July 23, 1976, seeking damages and declaratory and injunctive relief for the asserted violations of his constitutional rights.
 
 
 6
 Since the time Fayle was denied relief in the District Court and instituted this appeal, Fayle was adjudged mentally competent and was released from the state hospital. The state brought other charges against Fayle, tried and convicted him, and now has Fayle serving sentence in state prison. Since he is no longer being confined in the state hospital, Fayle's claim for injunctive relief from the continued attachment of his future income is moot. On the other hand, Fayle's claim for damages and return of the funds paid over to the county treasurer remains a live issue.
 
 II.
 
 7
 Appellees concede that Fayle was denied the process he was due, admitting that Fayle was not given notice and a hearing prior to the order affecting his Patient Deposit Fund.[2] Nonetheless, appellees contend that the summary judgment should be affirmed. They argue that Fayle filed his suit against the wrong parties, pointing out that these parties acted only in compliance with an order of the state court. Fayle should have brought his suit, so appellees argue, against the deputy county attorney who, without giving proper notice to Fayle,[3] brought the petition in state court for reimbursement for the cost of Fayle's maintenance and care. Not only do appellees contend that they are insulated from liability under Section 1983 because the withdrawals from Fayle's account were authorized by the court order, but they also claim insulation from liability on the grounds that any involvement they might have had in obtaining the state court order was merely pursuant to acts of good faith enforcement of a state statute that was presumably valid. See Mosher v. Saalfeld, 589 F.2d 438, 441-42 (9th Cir. 1978).
 
 
 8
 As to appellee Dandoy, the director of the state health department, we agree that no liability can be shown. Fayle has not alleged that Dandoy personally participated in the taking of his property. Rather, the alleged liability is based solely on Dandoy's status as director of the state health department and her supervisory power over the Arizona State Hospital. We have held that in a Section 1983 action, vicarious liability may not be imposed on a state or municipal official for acts of lower officials in the absence of a state law imposing such liability. Mosher v. Saalfeld, supra, 589 F.2d at 441; Boettger v. Moore, 483 F.2d 86, 87 (9th Cir. 1973). Fayle has cited no Arizona law imposing such vicarious liability. Accordingly, the suit against Dandoy cannot stand, and the judgment in her favor is affirmed.
 
 
 9
 As to appellees Sandritter and Stapley, we have concluded that material issues of fact remain to be resolved in the District Court. Fed.R.Civ.P. 56(c). Left unresolved is the factual dispute as to whether Sandritter, as director of the state hospital and the "custodian" of Fayle, was vested with the duty to ensure that Fayle received actual notice of the petition for a maintenance order. Also in doubt is whether Sandritter, as the custodian of Fayle's Patient Deposit Fund, stood in a fiduciary relationship to Fayle in respect to claims asserted against the fund. Likewise, Stapley, as county treasurer, may also be implicated in the failure to ensure that Fayle received notice of the petition. The county treasurer, as recipient of the payments made on behalf of Fayle, may have been at least partially responsible for instigating the maintenance action in the state court. These issues of fact must be addressed in the first instance by the District Court.
 
 
 10
 As to Sandritter and Stapley's claims that they are clothed with immunity from suit because they acted under authorization of the state court order,[4] we recognize that such immunity does shield appellees from civil rights liability for their actions Subsequent to the court's order. This immunity does not, however, extend to acts performed to obtain that order. Among the other issues of fact to be resolved at trial is whether appellees Sandritter and Stapley acted in good faith in procuring the maintenance order. The District Court never addressed the issue of good faith enforcement of the Arizona statute. Especially in light of the fact that Fayle was never personally informed of the state court proceedings and that the order was obtained at a hearing outside his presence, we conclude that the District Court's summary judgment in favor of Sandritter and Stapley was inappropriate. See Johnson v. Duffy, 588 F.2d 740, 745 (9th Cir. 1978). In granting summary judgment against Fayle, the District Court discussed only Fayle's equal protection challenge to the Arizona statutes. That the statutes are constitutional in a broad sense does not resolve Fayle's contention that he was denied due process by the manner in which the statutes were applied in his case. The record is clearly insufficient to warrant our affirming the judgment on grounds not considered by the District Court.
 
 III.
 
 11
 Fayle also claims that the District Court erred in holding that the Arizona statutes did not deny him equal protection of the laws. Fayle contends that Arizona has created an impermissibly arbitrary classification by distinguishing between prisoners, who are not required to pay for the cost of their penal confinement, and persons involuntarily committed to state institutions because found incompetent to stand trial or because civilly committed, who are required to pay the cost of their own care and maintenance to the extent that they are financially able to do so. See Ariz.Rev.Stat. §§ 13-3992 and 36-545.01. We note that all courts that have considered similar equal protection claims have rejected the argument that the state has set up an artificial distinction between ordinary prisoners and hospital inmates. See State ex rel. Dorothea Dix Hospital v. Davis, 292 N.C. 147, 232 S.E.2d 698, 702 (1977); Department of Mental Health v. Pauling, 47 Ill.2d 269, 265 N.E.2d 159, 161 (1970); State v. Estate of Burnell, 165 Colo. 205, 439 P.2d 38, 40, Appeal dismissed, 393 U.S. 13, 89 S.Ct. 46, 21 L.Ed.2d 13 (1968); See also McAuliffe v. Carlson, 377 F.Supp. 896, 899-904 (D.Conn.1974), Supplemented, 386 F.Supp. 1245, Rev'd on other grounds, 520 F.2d 1305 (2d Cir. 1975), Cert. denied, 427 U.S. 911, 96 S.Ct. 3199, 49 L.Ed.2d 1203 (1976); In re Sargent, 116 N.H. 77, 354 A.2d 404, 407 (1976); Cf. Department of Mental Health v. Coty, 38 Ill.2d 602, 232 N.E.2d 686, 688 (1967) (upheld against equal protection claim an order requiring relatives of an incompetent to pay for incompetent's confinement). But cf. Department of Mental Hygiene v. Kirchner, 60 Cal.2d 716, 36 Cal.Rptr. 488, 388 P.2d 720 (1964), Vacated, 380 U.S. 194, 85 S.Ct. 871, 13 L.Ed.2d 753 (1965), On remand, 62 Cal.2d 586, 43 Cal.Rptr. 329, 400 P.2d 321 (1965) (order imposing liability on relatives of incompetent denied on equal protection grounds under State constitution). We likewise reject Fayle's argument.
 
 
 12
 Undoubtedly the state, and its citizens, benefit when the criminally insane are safely confined in hospitals and are receiving care for their disorders. Yet it is safe to assume, as the Arizona legislature has apparently done, that the greater benefit is to the involuntarily committed mental patient. It is not unreasonable to require the patient to contribute to his care to the extent of his reasonable ability.
 
 As the Colorado Supreme Court has written:
 
 13
 The legislature has given recognition to the fact that the criminally insane persons are ill and that many usually cannot be put to profitable work. It would therefore be impractical to attempt to recover the costs of their care by requiring them to earn it, although there are undoubtedly some instances in which they do earn their care and maintenance. Also hospital care and treatment is generally more involved, more expensive and oftentimes of considerably longer duration than commitment in other institutions. We can see no constitutional inequality in requiring those receiving more expensive care to be liable for additional costs through assets which they may have accumulated.
 
 
 14
 State v. Estate of Burnell, supra, 165 Colo. at 209, 439 P.2d at 40.
 
 IV.
 
 15
 Finally, Fayle contends that the taking of his property pursuant to the Arizona statutes deprived him of funds which he could have used to engage counsel to represent him at various civil and criminal hearings.[5] The District Court never considered this claim. On remand, Fayle should be given the opportunity to raise this claim anew and to demonstrate how, as he contends, appellees Sandritter and Stapley caused him damage.
 
 
 16
 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
 
 
 
 *
 The Honorable Edmund Port, Senior United States District Judge for the Northern District of New York, sitting by designation
 
 
 [1]
 The Arizona statutes in question are, in pertinent part, as follows:
 S 13-3992. Expenses of maintenance of insane defendant as county charge
 When a defendant in a criminal action, any time prior to pronouncement of sentence, is committed to the state hospital, the expenses of transporting him to and from the hospital and of maintaining him while confined therein shall be a charge against the county in which the indictment was found or information filed, but the county may recover such expenses from the estate of the defendant or from a relative, town, city or county required by law to provide for and maintain the defendant.
 S 36-545.01. Payment of costs and expenses by person hospitalized other than voluntarily in the state hospital; ascertainment of ability to pay; power and duty of court; acceptance of other benefits; per capita cost limitation; appointment of guardian; parental liability; lien; duty of county attorney
 A. When a patient is admitted to the state hospital for court-ordered treatment pursuant to article 5 of this chapter, the business manager of the state hospital shall inquire into the ability of the patient to pay the costs of examination, maintenance and treatment. The business manager shall file with the clerk of the court a written report of his findings and the basis therefor.
 B. If the patient is able to pay all or any portion of the charges, the court shall order the payment of such amount as the patient can afford of the per capita cost for examination, treatment and maintenance as estimated by the Director. The court may, upon petition of an interested person, and at a hearing of which all concerned parties have received notice, increase or decrease the maintenance charge payable by the patient or his estate.
 C. Notwithstanding any provision of subsection B, any federal, state, public or private medical benefits which are payable to the state hospital where the patient is receiving care and treatment or payable to the patient may be accepted by the state hospital without a court order, except that the state hospital shall not accept any such benefits which alone or in addition to any amounts payable pursuant to subsection B exceed the per capita cost for the patient.
 D. The court may, if necessary, appoint a conservator of the patient to carry out the provisions of this section. If a conservator is appointed, the clerk of the court shall file a certificate so stating. All proceedings relating to such conservatorship shall be had as provided by law for conservators of estates. The conservator shall pay the amount ordered by the court as in subsection B.
 
 
 [2]
 Appellees recognize that Fayle's interests in the Patient Deposit Fund and in his disability insurance benefits represent substantial property interests to which due process protection must be afforded. See Fuentes v. Shevin, 407 U.S. 67, 80-93, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 261-63, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Vecchione v. Wohlgemuth, 377 F.Supp. 1361, 1370 (E.D.Penn.1974). These interests, being affected as they were by an order entered without notice to Fayle or a hearing at which Fayle had the opportunity to be present, will serve as bases for a civil rights suit under 42 U.S.C. § 1983. See, e. g., Dale v. Hahn, 486 F.2d 76, 79 (2d Cir. 1973); Vecchione v. Wohlgemuth, supra, 377 F.Supp. at 1369-71. See generally Fuentes v. Shevin, supra
 
 
 [3]
 Fayle never received personal notice of the action filed in the state court. Rather, notice was delivered to the Arizona State Hospital as Fayle's "custodian." At oral argument, appellees were unable to say whether a conservator to Fayle's estate had ever been appointed. The parties, and this court, have, accordingly, proceeded on the assumption that no conservator was appointed, pursuant to Ariz.Rev.Stat. § 36-545.01(D), to carry out the provisions of the statutory scheme for payment of maintenance charges. The Arizona statute clearly requires that "all concerned parties" receive notice of the hearing. Ariz.Rev.Stat. § 36-545.01(B); See Ariz.Ops.Atty.Gen. No. 72-32-L (August 28, 1972). Notice to the hospital here was constitutionally insufficient. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("(W)hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the (person) might reasonably adopt to accomplish it. . . .")
 
 
 [4]
 See Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.), Cert. denied, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969); International Molders & Allied Workers v. Buchanan Lbr. Birmingham, 459 F.Supp. 950, 952 (N.D.Ala.1978)
 
 
 [5]
 For example, at oral argument Fayle's counsel related how Fayle had dismissed Seriatim between ten and twenty attorneys appointed by the state to represent him at his criminal trial following his release from the state hospital because he was unsatisfied with their representation. According to Fayle, such dismissals would have been unnecessary if he had been allowed to employ counsel of his own choice with his own funds. Fayle contends, without any factual basis to support the contention, that court appointed counsel are reluctant to raise difficult and novel issues which would be raised by retained counsel