DECISION
Before this Court is an appeal from a decision of the City of Pawtucket Zoning Board of Review (the Board) filed by Pawtucket CVS, Inc. (CVS) and Wrev Pawtucket, LLC (Wrev) (collectively, the Appellants). The Board's decision affirmed the denial by the Director of Zoning and Code Enforcement in Pawtucket (the Director) of an interpretive certificate. The Appellants further request this Court to declare unconstitutional certain portions of the Zoning Ordinance for the City of Pawtucket (the Ordinance). Jurisdiction in this Court is pursuant to G.L. 1956 §45-24-69 and G.L. 1956 chapter 30 of title 9.
 Facts and Travel
The property in question is located at 534 Armistice Boulevard in Pawtucket, otherwise known as Lot No. 828 on Tax Assessor's Plat 17. It is owned by Wrev and leased to CVS. CVS operates a drug store in the building. On January 21, 2004, the appellants wrote to inform the Board that they wished to withdraw, without prejudice, a previous request for a variance to install signage on the property. Appellants' letter dated January 21, 2004.[1] Instead, they informed the Board that they intended to submit an application for a special use permit. Id.
It appears that around this time, the Appellants were in verbal contact with the Director. See Affidavit of Eric R. Everett,Esquire, dated January 28, 2004.[2] Evidently, they had asked him to issue a certificate setting forth his official interpretation of the term "flashing signs" as provided by Zoning Ordinance for the City of Pawtucket (the Ordinance) because they wanted to install on the walls of the building two electronic message signs. Id. and Letter from the City Solicitor for theCity of Pawtucket (City Solicitor) dated July 9, 2004. Said certificate was necessary before the Appellants could seek a building permit allowing them to affix two electronic message signs to a building. The appellants claim that the Director allegedly issued such a certificate in their favor and then later denied the request on grounds that the proposed signs constituted prohibited "flashing" signs. Id.
According to Attorney Everett, on January 26, 2004, the Director said that although he believed that the Ordinance permitted the proposed signs, the Director of Planning and Redevelopment, Michael D. Cassidy, told him not to issue such an interpretation because, in Mr. Cassidy's opinion, the signs were prohibited "flashing" signs. Affidavit of Eric R. Everett,Esquire, dated January 28, 2004. Apparently, the Director stated that he disagreed with Mr. Cassidy's interpretation but was deferring to his judgment. Id.
On May 20, 2004, the City Solicitor received a memorandum from Mr. Cassidy. In it, Mr. Cassidy stated that he believed that the proposed signs constitute "flashing" signs and that he would issue a building permit only after the Appellants obtained a Use Variance. Id. On June 15, 2004, the Appellants wrote to the City Solicitor. In their letter, they requested "assistance in connection with the differences that have apparently arisen between" the Director and Mr. Cassidy. Appellants' Letter dated June 15, 2005 at 1. The Appellants took the position that an electronic message board is not a "flashing" sign and that Mr. Cassidy did "not have the power or authority to control the issuance of interpretive certificates by the Director. . . ."Id.
The City Solicitor responded by writing to the Appellants on July 9, 2004. She stated that the Director erroneously had issued an interpretive certificate and that the Appellants would have to apply for a Use Variance. City Solicitor's Letter dated July 9, 2004. The Appellants immediately responded by questioning the City Solicitor about Mr. Cassidy's authority to make interpretive determinations of the Ordinance. Appellants' Letter dated July 10, 2004. The City Solicitor explained to the Appellants that while the Director may interpret provisions of the ordinance, his interpretations "must not be contrary to the goals and policies of the Comprehensive Community Plan." City Solicitor's Letter
dated July 20, 2004. She then stated: "When there is controversy and the matter affects the Comprehensive Plan, the Director of the Department of Planning and Redevelopment [Mr. Cassidy] may offer an opinion and rule on the matter." Id.
The Appellants thereafter indicated that they planned to appeal to the Board and requested that the Director issue a written determination so that they could file their appeal. Appellants'Letter dated July 21, 2004. On August 18, 2004, the City Solicitor informed the Appellants that "[t]here is nothing filed or pending from which a decision could be rendered" and that "[a]lthough there have been some conversations and/or discussions, there is nothing filed with Zoning." CitySolicitor's Letter dated August 18, 2004. Subsequently, on August 25, 2004, the City Council amended the Ordinance's definition of "flashing" signs.[3]
On September 3, 2004, the Director issued a written decision in which he stated that the proposed signs constituted prohibited "flashing" signs. The Appellants timely appealed the Director's decision to the Board on October 1, 2004. On November 30, 2004, the Board held a duly noticed hearing from which Board Member Richard J. Ferland recused himself. There were no objectors present at the hearing.
Citing the pre-amendment "flashing" sign provision of the Ordinance, counsel for the Appellants argued at the hearing that the proposed message boards did not constitute "flashing" signs because there would be no scrolling or flashing and each message would be displayed for 40 minutes. Hearing Transcript (Tr.I)[4] at 2-3. He explained that the message boards would provide advertising and community service messages displayed in red light. Tr. I at 7. When asked whether the purpose of the sign is to make more money, counsel for the Appellants responded: "Absolutely." Tr. I at 13. He later was asked: "If there were no intermittent signs, C.V.S. would not close its doors?" Counsel replied: "No. I don't know. I don't think there's any threat of losing business. . . ."
At one point during the hearing, Board Member Douglas S. McKinnon observed:
 "I have lived near this intersection my entire life, it's one of the busiest intersections, and it's a major elementary school crossing. I have personally seen dozens of pedestrians trying to cross at that corner, and I'm just wondering if the drivers at that major intersection need one more diversion to what they are doing." Tr. I at 9-10.
Counsel for the Appellants stated that he believed a changing message would be a "minimal diversion" to drivers. Tr. at 11. After receiving all of the evidence and listening to the arguments of Appellants' counsel, the hearing was adjourned.
On December 7, 2004, the Board reconvened to consider the Appellants' appeal. Tr. II. Again, Board Member Ferland recused himself. Tr. II at 1. The Chairman of the Board then summarized the proceedings. Tr. II at 1-3. Thereafter, a motion was tabled to deny the request for a variance.[5] Tr. II at 3. At this point, Board Member Ferland pointed out to the Board that the Ordinance had been amended. Tr. II at 4. Another Board Member compared the language of the previous "flashing" light provision with the current provision and then stated:
 "So, the language that was approved by the City Council on August 25, would apply. So, I believe that the applicant was looking at the wrong language and I agree with [Board Member] McKinnon that the application or the appeal should be denied. Again, this is an appeal by C.V.S. of the Zoning Official's ruling and we use a different standard, we are not looking at this as to whether it's an application for a variance, we are looking to see if the official ruling was arbitrary, capricious, erroneous, and clearly against the law; based upon the new language in the statute, and the testimony that was given by the applicant, it appears as though there will be changes in directing the message, even if it is forty minutes apart, there will be a change in the message that they are proposing, so, I don't believe the Zoning Official was incorrect in his decision." Tr. II at 6-7.
The Board then unanimously voted to deny the appeal. Tr. II at 8. On February 9, 2005, the Board's written decision was recorded in the Pawtucket Land Evidence Records.
In its written decision, the Board stated that it had made an inspection of the property and the surrounding area. It found that the Appellant's property was "located at one of the busiest intersections within the City." Decision at 1. It also found that the Appellants conceded that it would not go out of business if it did not receive permission to erect the signs. Id. The Board then observed that during the hearing, it had taken administrative notice of Mr. Cassidy's findings and his advisory opinion that the proposed signs constituted "flashing" signs.Id. The Board concluded that the appeal should be denied. Id.
The Appellants timely appealed the Board's decision to this Court by filing a complaint. The Appellants later amended their complaint to include a petition for Declaratory Relief pursuant to G.L. 1956 chapter 30 of title 9. Specifically, they seek this Court to declare the signage provisions of the Ordinance as unconstitutional.[6]
 Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241,245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George ShermanSand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
In conducting its review, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v.Church Community Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting G.L. 1956 § 45-24-69(d)). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Bd. of Review of EastProvidence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962).
 The Board's Decision
The Appellants raise four issues on appeal. First, they contend that the Director of Planning and Redevelopment, Mr. Cassidy, exceeded his authority when he told the Zoning Director to deny the certificate. Second, they maintain that because their application for an interpretive certificate preceded the amendment of the "flashing" sign Ordinance provision, the Board should have considered their application under the terms of the pre-amendment provision. Next, the Appellants aver that the Board's decision is void because Mr. Ferland participated in the deliberations after he had recused himself.[7]
Finally, the Appellants assert that the Ordinance's signage provisions violate the First Amendment of the United States Constitution because they exempt some categories of signs while prohibiting other categories with no compelling interest to make such distinctions. They seek a declaratory judgment on this issue.
A. Statutory Interpretation
The Appellants cite Section 410-93 of the Ordinance to support their contention that the Director is the only person who can interpret and enforce the provisions of the Ordinance. The Appellants contend that the Director erroneously relied upon Mr. Cassidy's conclusion that electronic message boards constituted prohibited "flashing" signs because the Ordinance did not delegate similar powers to the Director of Planning and Redevelopment. They maintain that Mr. Cassidy's improper interference in the matter prevented them from obtaining a favorable interpretation from the Director.
The Appellants further complain that the Board erroneously interpreted an amended provision of the Ordinance when it considered their application. They maintain that the Board should have applied the doctrine of detrimental reliance because the Director had verbally agreed that the proposed signs were permissible before Mr. Cassidy overruled him.
This Court reviews issues of statutory interpretation denovo. See Palazzolo v. State ex rel. Tavares, 746 A.2d 707,711 (R.I. 2000). It is well settled that "the rules of statutory interpretation apply equally to the construction of an ordinance." Mongony v. Bevilaqua, 432 A.2d 661, 663 (R.I. 1981). In this Court's de novo review, a zoning board's determinations of law, like those of an administrative agency's, "are not binding on the reviewing court; they `may be reviewed to determine what the law is and its applicability to the facts.'"Gott v. Norberg, 417 A.2d 1352, 1361 (R.I. 1980) (quotingNarragansett Wire Co. v. Norberg, 118 R.I. 596, 376 A.2d 1, 6
(1977)).
Where the language of a statute or ordinance "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. of Employees' RetirementSystem of State v. DiPrete, 845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). This means that when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written."Id.
In Rhode Island, "[o]ur process of statutory construction further involves a `practice of construing and applying apparently inconsistent statutory provisions in such a manner so as to avoid the inconsistency.'" Kells v. Town of Lincoln,874 A.2d 204, 212 (R.I. 2005) (quoting Montaquila v. St. Cyr,433 A.2d 206, 214 (R.I. 1981)). Furthermore, where "the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized."Labor Ready Northeast, Inc. v. McConaghy, 849 A.2d 340, 345
(R.I. 2004). Finally, "[t]his Court will not construe a statute to reach an absurd result." State v. Flores, 714 A.2d 581, 583
(R.I. 1998) (quoting Kaya v. Partington, 681 A.2d 256, 261
(R.I. 1996)).
Sections 410-11 and 410-93 of the Ordinance grant the Director the authority to interpret and enforce the Ordinance. Section 410-11(A) provides: "[i]t shall be the duty of the Director of Zoning and Code Enforcement, hereafter written as `Director,' to interpret and apply, the provisions of this chapter . . . In interpretation and application, the provisions of this chapter shall be held to be the minimum requirements for the promotion of health, safety, convenience or the general welfare." Section 410-11(B) further requires that
 "[t]his chapter shall be consistent with the Comprehensive Community Plan . . . and in the instance of uncertainty in the construction or application of any section of this chapter, this chapter shall be construed in a manner that will further the implementation of, and not be contrary to, the goals and policies and applicable elements of such Comprehensive Community Plan."
The Rhode Island Comprehensive Planning and Land Use Act defines a planning board as "the body established by a municipality or combination of municipalities which has the responsibility to prepare a comprehensive plan and make recommendations concerning that plan to the municipal legislative body." G.L. 1956 § 45-22.2-4(24). Section 4-900 of the Charter for the City of Pawtucket provides in pertinent part:
 "[t]he department of planning and redevelopment shall also be responsible for zoning code enforcement . . . in addition to the responsibilities relating to the preparation and maintenance of the comprehensive plan for the city . . . and the implementation of said plans."
Section 410-93 of the Ordinance provides:
 "It shall be the duty of the Director to interpret and enforce the provisions of this chapter in the manner and form and with the powers provided in the laws of the state and in the Charter and ordinances of the City. The Director shall refer all applications for variances, special use permits and other appeals to the Zoning Board of Review. The Director shall make a determination in writing, within 15 days; to any written complaint received, regarding a violation of this chapter. In order to provide guidance or clarification, the Director shall, upon written request, issue a zoning certificate or provide information to the requesting party within 15 days of the written request. Any determination of the Director may be appealed to the Zoning Board of Review in accordance with Article XII of this chapter." (Emphasis added).
It is clear from the foregoing that while the Zoning Director is responsible for interpreting the Ordinance, he also must follow the state law as well as the City Charter. See Section 410-93. It also is clear to this Court that the Director's interpretations must be consistent with the Comprehensive Plan.See Section 410-11. The City Charter designates the Department of Planning and Redevelopment as being responsible for overseeing zoning code enforcement and for developing, implementing and maintaining a Comprehensive Plan. The regulation of sign placement in Pawtucket is governed by the Comprehensive Plan; thus, it comes within the jurisdiction of the Department of Planning and Redevelopment. Consequently, it was not erroneous for the Director of the Department of Planning and Redevelopment, Mr. Cassidy, to offer his opinion on the Appellants' proposed signs.
This Court will now address the Appellants' contention that the Board erroneously applied an amended provision of the Ordinance to their application. On August 25, 2004, the City Council amended the Ordinance's definition of "flashing" sign. It previously had defined a "flashing" sign as "A sign which contains an intermittent or sequential flashing light source used primarily to attract attention." Section 410-84(B) of the Ordinance.[8] The same provision now defines a "flashing" sign more broadly as "A sign whose illumination is not kept [at] constant intensity at all times when in use, and which exhibits changes in light, color, direction, message or animation. Illuminated signs which indicate the date, time and temperature will not be considered flashing signs." Id.
In reaching its decision, the Board considered the language of the amended definition of "flashing" sign.[9] The Appellants contend that this constituted error and that the doctrine of detrimental reliance should apply in this case.
It is axiomatic that the City Council was presumed to know the state of the existing Ordinance when it enacted the amendment and that it deliberately defined the term "flashing" sign more expansively. See State v. DelBonis, 862 A.2d 760, 768-69
(R.I. 2004) (reiterating that "[t]he Legislature is `presumed to know the state of existing law when it enacts or amends a statute.'") (quoting Simeone v. Charron, 762 A.2d 442, 446
(R.I. 2000)).
This Court concludes that it was not erroneous for the Board (or even for the Director) to consider the amended version of the Ordinance. That is because it is only after a "substantially complete" application has been submitted to the appropriate official or agency that a substantial interest will arise and the grant or denial of enforceable rights is at issue. See G.L. 1956 § 45-24-44 (providing that "A zoning ordinance provides protection for the consideration of applications for development that are substantially complete and have been submitted for approval to the appropriate review agency in the city or town prior to enactment of the new zoning ordinance or amendment.").
In this case, it is not clear that the Appellants have ever submitted a written application, as required by Section 410-93 of the Ordinance; instead, the Appellants simply made a verbal request to the Director that he issue an interpretative opinion of the Ordinance. Apparently, the Director verbally informed the Appellants that the proposed signs were prohibited. SeeAffidavit of Eric R. Everett, Esquire, dated January 28, 2004. On July 21, 2004, the Appellants wrote to the City Solicitor asking for an actual determination from the Director so that they could file an appeal to the Board. See Appellants' Letter
dated July 21, 2004. On August 18, 2004, the City Solicitor informed the Appellants that the Director was unable to make any such determination because "[t]here is nothing filed or pending from which a decision could be rendered."
There is no evidence in the record that the Appellants thereafter filed an application for an interpretive certificate from the Director, and they never applied for a use variance. Despite the apparent lack of a substantially completed application, the Director issued an interpretive decision on September 3, 2004. That decision was issued after the August 25, 2004 amendment of the Ordinance. Because there is no evidence that Appellants ever submitted a substantially complete application before the amendment, the Director properly could have relied upon the amended language in formulating his opinion and the Board did not err in considering the amended provision. Furthermore, assuming, arguendo, that it was error for the Board (and the Director) to consider the amended provision of the Ordinance, Mr. Cassidy's interpretation of the pre-amendment Ordinance was not erroneous and would have provided grounds for the Board to deny the appeal.
The record reveals that on May 20, 2004, the City Solicitor received a memorandum from Mr. Cassidy concerning the Appellants' proposed signs. See Department of Planning and RedevelopmentMemorandum. Mr. Cassidy stated that "as long as [counsel for the Appellants is] asking for a Building Permit, we are going to insist that any sign that can change electronically is a flashing sign and he needs to apply for a Use Variance." He further stated: "I think the current definition [of "flashing" signs] is broad enough to include a sign that `changes' whether it's every forty (40) minutes or every twenty (20) minutes or every 60 seconds[,]" and this Court gives deference to such a finding.See New Harbor Village, LLC v. Town of New Shoreham, No. 2005-20-Appeal, slip op. at 7 (R.I. filed April 3, 2006) (observing that "an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency.")
The record further reveals that the Board took administrative notice of Mr. Cassidy's findings and conclusions based upon the pre-amendment definition of "flashing" signs. Although the Director's September 3, 2004 written decision rejecting the Appellants' proposed interpretation of "flashing" signs did not state the version of the Ordinance upon which he relied, he verbally rejected the proposed interpretation based upon Mr. Cassidy's analysis of the pre-amendment definition of "flashing" signs.
The Appellants admit that the message will change every forty minutes. Counsel for the Appellants stated at the hearing: "We are not flashing for the primary purpose of attracting attention. I'll agree it's illuminated and it's a sign to attract people to look at it." He later stated that the purpose of the sign is "[t]o make more money, by getting people to come in." Clearly, in order to achieve this purpose, the sign must attract attention in the first place. Furthermore, the signs' changing every forty minutes plainly falls within the amended version of flashing sign. Although Mr. Cassidy's interpretation under the old Ordinance prohibited the erection of the type of signage envisioned by the Appellants and although this Court gives deference to such an interpretation, the Board properly used the new Ordinance in reaching its decision. While it is unclear upon which version the Director relied, he too should have relied upon the amended version. Consequently, Mr. Cassidy's interpretation of the pre-amended version of the Ordinance is of no consequence to the outcome of this decision.
The Appellants next assert that the doctrine of detrimental reliance should have applied to their appeal. Essentially the Appellants argue that they had expected to receive a building permit based upon the Director's initial approval of the interpretative certificate, and they rely on a string of Rhode Island cases in support of their contention that the doctrine of detrimental reliance should apply. See Matunuck Beach Hotel,Inc. v. Sheldon, 121 R.I. 386, 399 A.2d 489 (1979); A. Ferland Sons, Inc. v. Zoning Bd. of Review of City of East Providence,105 R.I. 275, 251 A.2d 536 (1969); Tantimonaco v. Zoning Bd. ofReview of Town of Johnston, 102 R.I. 594, 232 A.2d 385, (1967);Shalvey v. Zoning Bd. of Review of City of Warwick,99 R.I. 692, 210 A.2d 589 (1965). These cases readily are distinguishable from the present case because in each of them, some type of permit was issued before there was a change in the law. Here, there is no evidence that a permit ever was issued, much less issued before the challenged amendment.
The Appellants contend that the Director's verbal interpretation of the Ordinance is enough to overcome this deficiency. However, this argument ignores the fact that "[e]ven when an applicant is issued a permit, unless he proceeds in good faith to incur substantial obligations in reliance thereon, the permit may be vacated or revoked because of subsequently adopted amendments to the zoning ordinance which prohibit the proposed use of the land." Shalvey, 99 R.I. 692, 698, 210 A.2d 589, 593. That is because, "only substantial performance in carrying out the authorization granted in the permit will immunize [a party] from the adverse effects of a subsequent amendment." Id.
There is no evidence in the record that the Appellants relied upon the Director's alleged interpretation of the Ordinance to incur substantial obligations in good faith. Indeed, considering that they never possessed the requisite building permit, they were in no position to incur substantial obligations in goodfaith. Consequently, the Appellants failed to demonstrate any detrimental reliance whatsoever.
B. The Constitutionality of the Zoning Ordinance
The Appellants amended their complaint in order to petition this Court to declare that the Ordinance's signage provisions violate the First Amendment. Specifically, they assert that the Ordinance unconstitutionally regulates certain categories of signs based upon their content without compelling justification and that it unconstitutionally fails to contain time limitations for the granting of a permit.[10] The Appellants cite to the Eleventh Circuit Opinion in Solantic LLC v. City of NeptuneBeach, 410 F.3d 1250 (11th Cir. 2004) in support of their assertions.
The First Amendment to the United States Constitution guarantees that "Congress shall make no law . . . abridging the freedom of speech. . . .' U.S. Const., Amend I. The Rhode Island Constitution contains a similar prohibition. See R.I. Const. art. 1, sec. 21 ("No law abridging the freedom of speech shall be enacted."). The Rhode Island Supreme Court has recognized "that each First Amendment case must be analyzed separately, based on the specific method of communication involved, and the values and the dangers implicated." Rhode Island Liquor Stores Ass'n v.Evening Call Pub. Co., 497 A.2d 331, 337 (R.I. 1985) (citingMetromedia, Inc. v. City of San Diego, 453 U.S. 490, 501 (1981) (plurality opinion); Federal Communications Commission v.Pacifica Foundation, 438 U.S. 726, 748 (1978)).
The determination of whether a regulation or ordinance abridges freedom of speech requires a three-part analysis. See IrishSubcommittee of the Rhode Island Heritage Commission v. RhodeIsland Heritage Commission, 646 F.Supp. 347, 352 (D.R.I. 1986)). The court must determine (1) whether the speech is protected under the First Amendment; (2) whether the restriction is content-based or content-neutral; and, (3) whether to apply strict scrutiny or whether a lesser standard is applicable. Id.
In the instant case, the Appellants wished to install electronic signs that would provide advertising and community service messages. Such messages would constitute protected commercial speech. See S S Liquor Mart, Inc. v. Pastore,497 A.2d 729, 733 (R.I. 1985) (recognizing that "advertising as a form of commercial speech is accorded limited protection by theFirst Amendment"). Although the protection afforded commercial speech is limited, nevertheless, the Appellants overcome the first hurdle in this three-part inquiry.
This Court next must determine whether the alleged Ordinance restrictions are content-based or content-neutral. In determining content-neutrality, the principal inquiry "is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys." TurnerBroadcasting System v. FCC, 512 U.S. 622, 642 (1994). Regulations that distinguish favored speech from disfavored speech on the basis of views expressed are content-based. Seeid. at 643. Furthermore, regulations that impose burden on speech without reference to the ideas or views expressed are in most cases content-neutral. Turner, 512 U.S. at 642.
Content-neutral regulations involve incidental interferences with speech "merely as a by-product of the government's effort to regulate some evil unconnected with the content of the affected speech." Providence Journal Co., v. Newton, 723 F.Supp. 846,853 (D.R.I. 1989). In such cases, "`[c]ontent-neutral time, place or manner restrictions are acceptable `so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.'" ElMarocco Club, Inc. v. Richardson, 746 A.2d 1228, 1235 (R.I. 2000) (quoting City of Renton v. Playtime Theatres, Inc.,475 U.S. 41, 47, reh'g denied, 475 U.S. 1132 (1986). Similarly, with respect to advertisement signs, the United States Supreme Court has recognized that it is constitutionally permissible to regulate signs with content-neutral time, place and manner restrictions where such restrictions promote the substantial government interests of aesthetics and traffic safety.Metromedia, Inc., 453 U.S. at 507.
The Ordinance defines a sign as "[a]ny object, device or structure, or part thereof, situated outdoors which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business, product, service, event or location by any means, including words, letters, figures, designs, symbols, fixtures, colors, illumination or projected images." Section 410-85. The purpose of the signage provisions is
 "to recognize the function of signs in the City of Pawtucket, to provide for their inclusion under this chapter and to regulate and control all matters relating to such signs, including location, size and purpose. Signs are accessory uses and are permitted only in conjunction with permitted uses. Such signs are intended to advertise goods, services, facilities, events or attractions available on the premises where located, to identify the owner or occupant or to direct traffic on the premises. It is the further purpose of the Article to preserve locally recognized values of community appearance; to safeguard and enhance property values in residential, commercial and industrial areas; to protect public investment in and the character of public thoroughfares; to reduce hazards to motorists and pedestrians traveling on the public way, and thereby to promote the public health, safety and welfare. These purposes will be accomplished by regulation of the display, erection, use and maintenance of signs." Section 410-81.
It is clear from the foregoing section that the City is concerned about traffic safety and aesthetics. See Munroe v. Town ofEast Greenwich, 733 A.2d 703, 710 (R.I. 1999) ("Zoning, land development and subdivision regulations constitute a valid exercise of police power, and are matters of statewide concern.") (citing G.L. 1956 §§ 45-24-27 through 45-24-72).
Section 410-83 of the Ordinance lists the signs that are permitted in all zones. It provides:
 "A. The following signs are permitted in all zones:
 (1) Governmental. Signs of every kind and nature erected by or on behalf of any federal, state or local government agency, including official traffic control or informational signs, hazard warning signs, legal notices, railroad crossing signs or other similar signs required by law.
 (2) Name plates. One name plate for each dwelling unit, not internally illuminated and not exceeding one square foot in area, indicating the name of the occupant, street address or any permitted occupation.
 (3) Identification. Wall signs, which may not be internally illuminated and which are permanently affixed to buildings for the purpose of identifying the name of building, date of erection or other historical information, provided that such signs are composed of similar materials as the building or aluminum, bronze or brass and are affixed flat against the building.
 (4) Credit card signs. Credit card signs, nonilluminated, limited to a total area of two square feet per structure.
 (5) Bulletin boards. Signs used as a bulletin or notice board to announce activities and events for institutional and governmental services . . . Such signs may not be internally illuminated.
 (6) Temporary signs. The following temporary signs, whether fixed or portable, are permitted in all zones:
 (a) Signs for events by nonprofit or charitable organizations, including exterior messages for national and state holidays; provided, however, that no such temporary sign may be erected for a period of more than 30 consecutive days in any year nor more than 14 days prior to the event plus the duration of the event, with a total of 45 cumulative days throughout the year. . . .
 (b) Rental or sale signs, freestanding or attached to the premises, pertaining to the prospective rental or sale of the property on which they are located, provided that such signs shall not be illuminated nor extend over the sidewalk. . . .
 (c) Construction signs and "grand opening" signs, nonilluminated, customary and necessary in connection with the erection of buildings or other construction work or signs for business where road construction obscures the existing sign or signs for such business, limited to one sign per street frontage for each construction project. . . .
 (d) Political signs, nonilluminated, incidental to a town, state or federal election or referendum, or signs which are political in nature. . . .
 (7) City-sponsored outdoor murals.
 B. Sign permit required. A permit shall be obtained from the Director for all signs under Subsection A(5) and (6)(a) and (c) above." Section 410-83.
Under this section, permits generally are not required to erect a sign; however, a limited number of signs do require a permit.See Section 410-83(B). The signs requiring a permit consist of (1) bulletin boards announcing activities or events for institutional and governmental services (Section 410-83(A)(5)); (2) temporary signs announcing events for nonprofit or charitable institutions (Section 410-83(A)(6)(a)); and, (3) temporary construction and grand opening signs (Section 410-83(A)(6)(c)). Permits are not required for any other type of sign. No sign may be illuminated except for those signs described in sections 410-83(A)(1) (governmental signs), 410-83(A)(6)(a) (temporary signs announcing events for nonprofit or charitable institutions), and 410-83(A)(7) (city-sponsored outdoor murals).
Section 410-84 of the Ordinance lists the signs that are prohibited in all zones without exception. It provides:
 "The following signs shall be prohibited in all zones in the City.
 A. Traffic or safety hazards. Signs determined to constitute a traffic hazard by the Chief of Police, or other safety hazard by the Director of Zoning and Code Enforcement. Said determination shall be made by reason of size, support material(s) used, location or type of illumination. [Amended 3-22-2001 by Ch. No. 2592]
 B. Flashing signs. A sign whose illumination is not kept constant intensity at all times when in use, and which exhibits changes in light, color, direction, message or animation. Illuminated signs which indicate the date, time and temperature will not be considered flashing signs. [Amended 8-25-2004 by Ch. No. 2739]
 C. Signs on utility poles. Utility poles owned by any governmental agency or utility company shall not be used for any type of sign or message other than those specifically erected by such governmental agency or utility company." Section 410-84.
These prohibitions apply to signs that are considered to be traffic or safety hazards, or signs that constitute "flashing" signs, and only governmental agencies and utility companies may place signs on utility poles. Consequently, even though some temporary signs are allowed to provide illumination, they may not be "flashing" signs or pose a traffic or safety hazard in violation of Section 410-84.[11]
The Appellants assert that this Court should follow the reasoning in Solantic LLC v. City of Neptune Beach,410 F.3d 1250 (11th Cir. 2004) to conclude that the Ordinance's signage provisions are content-based. That reliance, however, is misplaced. In Solantic, the Ninth Circuit Court of Appeals observed that the applicable code delineated permissible and prohibited signs, and that before erecting any permissible sign, an applicant was required to obtain a permit. Id.
401 F.3d at 1255. The court then observed that certain types of signs were exempted from the code altogether, including governmental signs of any kind, "[f]lags and insignia of any government, religious, charitable, fraternal or other organization . . . [,]" and "[s]igns on private premises directing and guiding traffic and parking on private property, but bearing no advertising matter."Id. at 1256-57.
The Circuit Court analyzed the disparate treatment between how the code treated permissible signs and exempted other signs completely from the code's provisions, including its prohibitions. Id. at 1264-66. The court then concluded that "because some types of signs are extensively regulated while others are exempt from regulation based on the nature of the messages they seek to convey, the sign code is undeniably a content-based restriction on speech." Id. In light of this holding, the court strictly scrutinized the code and determined that it failed to survive a strict scrutiny analysis. Id. at 1267.
Solantic is distinguishable from the case at bar. The Pawtucket Ordinance provides for permitted and prohibited signs; however, it does not have a category that completely exempts particular signs from its provisions. Under the Ordinance, nosign may constitute a traffic hazard, and only governmental signs may be "flashing." Furthermore, unlike in Solantic, which required permits for all but the exempted signs, most signs in Pawtucket do not require a permit. Consequently, viewing the Ordinance as a whole, this Court concludes that its prohibitions do not implicate content; rather, they constitute constitutionally sound time, place and manner regulations designed to promote the City's substantial interest in maintaining aesthetics and traffic safety. See Metromedia,Inc., 453 U.S. at 507.
Having concluded that the signage provisions are content-neutral and that the signs at issue in this case involve commercial speech, this Court next must consider the appropriate standard to apply in determining the constitutionality of the Ordinance. In Metromedia, the United States Supreme Court reiterated its four-part test for determining valid governmental restrictions on commercial speech. Metromedia, 453 U.S. at 507. That test is as follows:
 "(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. Id. (citing Central Hudson Gas Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 563-66 (1980).
At no point has it been alleged that CVS's proposed display of commercial advertising and community service messages would constitute misleading or unlawful activities. Furthermore, it is clear that the Ordinance's concern with aesthetics and traffic safety is a substantial governmental interest and that the prohibition on flashing signs directly advances that interest. The question that remains is whether the prohibition on "flashing" signs (excluding governmental signs) "reaches no further than necessary to accomplish" that interest.Metromedia, 453 U.S. at 507.
Like the billboards in Metromedia, there can be no question that "flashing" lights "are intended, and undoubtedly do, divert a driver's attention from the roadway." Id. at 508. Recognizing this fact, the United States Supreme Court "hesitated to disagree with the accumulated, commonsense judgments of local lawmakers . . . that billboards are real and substantial hazards to traffic safety." Id. at 509. Likewise, in the instant matter, because there was no evidence that "flashing" lights do not present substantial hazards to traffic, the Appellants did not meet their burden of showing that the City Counsel's prohibition on "flashing" signs "reaches no further than necessary to accomplish the given objective" of public safety. Metromedia,453 U.S. at 507. Consequently, this Court concludes that the Ordinance's signage provisions pass constitutional muster.
With respect to the instant matter, the Board made an inspection of the property and noted that fact in its decision.Decision at 1. It then specifically found "that this CVS is located at one of the busiest intersections within the City."Id.; see also Monforte v. Zoning Bd. of Review of EastProvidence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962) (recognizing "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance[,]" and that "[w]here it appears from the record that a decision was reached in reliance upon such knowledge, it is considered by this court to constitute legal evidence sufficient to support such a finding"). It further observed that denial of the application would not put CVS out of business and that when it originally applied for the building, "CVS indicated that its planned signage was ample." Id.; cf. Rhode Island Hospital Trust Nat. Bankv. East Providence Zoning Bd. of Review, 444 A.2d 862, 864 (R.I. 1982) (holding that it is well settled that in the context of a variance application, the mere showing of a more profitable use that would result in a financial hardship if denied does not satisfy the requirements of our law.").[12]
In light of the foregoing, this Court concludes that the Ordinance's signage provisions do not violate the Constitution. This Court further concludes that the Board was not clearly erroneous in upholding the Director's interpretation of the Ordinance's signage provisions.
 Conclusion
After a review of the entire record, this Court finds that the Board's denial of the Appellants' appeal was not in violation of statutory and ordinance provisions, was not in excess of the authority granted to the zoning board, and was not arbitrary and capricious. The Board's decision also was not affected by error of law and was not characterized by an abuse of discretion. Substantial rights of the Appellants have not been prejudiced. Accordingly, this Court affirms the Board's decision and denies the Appellants' petition for declaratory judgment.
Counsel shall submit an appropriate order consistent with this opinion.
[1] The exhibits are attached to the memoranda filed by the parties to this Court.
[2] Attorney Everett was a member of the same law firm as counsel for the appellants.
[3] The City Council amended the definition of "flashing" sign from "A sign which contains an intermittent or sequential flashing light source used primarily to attract attention" to "A sign whose illumination is not kept [at] constant intensity at all times when in use, and which exhibits changes in light, color, direction, message or animation. Illuminated signs which indicate the date, time and temperature will not be considered flashing signs." Section 410-84(B) of the Zoning Code of the City of Pawtucket.
[4] The Board met twice on this appeal. The first meeting was to conduct a hearing on the appeal. At the second meeting, the Board considered and decided the appeal. The transcripts from these hearings will be referred to as Tr. I and Tr. II,
respectively.
[5] The Board Member who tabled the motion appears to have confused the appeal from the Director's decision with an application for a variance. However, that error later was corrected by another Board Member. Tr. II at 7.
[6] The Attorney General declined an invitation to intervene or respond to the constitutional issues raised by the Appellants.
[7] This Court will combine these three issues under the heading "Statutory Interpretation."
[8] With respect to the word "intermittent," it "embodie[s] the idea of temporary discontinuance, interruption, cessation, pause. . . ." Norfolk W.R. Co. v. Simmons,103 S.E. 609, 612 (Va. 1920). Sequential is defined as "[f]orming or characterized by a sequence. . . ." The AmericanHeritage Dictionary 1588 (4th ed. 2000).
[9] Although Mr. Ferland brought the amended provision to the Board's attention after having recused himself from the matter, this Court need not address the propriety of his actions which, by this Court's decision, is herein rendered moot.
[10] This latter allegation has no merit because Section 410-93 of the Ordinance provides: "In order to provide guidance or clarification, the Director shall, upon written request, issue a zoning certificate or provide information to the requesting party within 15 days of the written request." This clearly constitutes a time limitation for the granting of a permit.
[11] Considering that governmental signs include such signs as official traffic control or informational signs, hazard warning signs and railroad crossing signs, it appears that the "flashing" sign prohibition does not apply to governmental signs. However, this does not suggest that such signs are permitted to be traffic or safety hazards in violation of § 410-84(B). Indeed, in most cases such signs are designed to prevent, alleviate or warn of traffic and safety hazards.
[12] Considering that this case was an appeal from the Director's denial of an interpretative certificate rather than from the denial of a variance, these findings may not have been necessary. However, such findings certainly are helpful to this Court in reviewing the Board's decision.